UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES | ) ) ) ) ) ) ) ) ) ) ) ) | Criminal Action No. 14-10237-DJC |
| v. |  |  |
| JOHN GEORGE, Jr., |  |  |
| Defendant. |  |  |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                April 2, 2015

### I.   Introduction

Defendant John George ("George") has moved to dismiss the indictment against him. D. 47, D. 48. Having considered the motions, the supporting memorandum, D. 46; D. 47, the government's opposition, D. 53, and the arguments presented at the motion hearing, D. 54, the Court DENIES the motion.

### II.   Factual Background

The following summary is as alleged in the indictment.

George was the owner and operator of the Union Street Bus Company ("USBC"), a bus company in New Bedford and Fall River, Massachusetts, that managed, operated and maintained public buses in New Bedford, Fall River and elsewhere. D. 1 at 1. George also ran John George Farms (the "Farm"), a farm in Dartmouth, Massachusetts that operated a produce stand and distributed produce in Southeastern areas of the Commonwealth. Id.

The Southeastern Regional Transit Authority ("SRTA") is a state regional transit authority providing services to various cities and towns including but not limited to New Bedford

1

and Fall River. Id. at 1-2. Between 2005 and 2011, the United States Department of Transportation ("DOT") provided annual benefits in excess of $10,000 to USBC via the SRTA, funded by DOT pursuant to numerous federal grants. Id. at 5. SRTA budgets, contracts and the appointment of its administrator are decided by its ten-member advisory board. Id. at 2. A friend of George's served as the Dartmouth representative to the advisory board from approximately 1995 to 2005 and also as the SRTA administrator from approximately 2008 to 2010. Id. at 4. From at least in or about 1995 to in or about December 2010, SRTA awarded USBC consecutive five-year contracts for over $1,000,000 per year under which USBC was responsible for managing, operating and maintaining the public bus transit services for the region. Id. at 2. Beginning in or about December 2010, SRTA paid USBC over $1,000,000 to operate the regional bus system, but did not award USBC another five-year contract. Id. These funds, distributed yearly, were used to pay USBC salaries, benefits and other expenses. Id.

The funds were also used to pay George a monthly management fee which was paid to Trans-AG Management, Inc., a holding company George owned. Id. George used a portion of these management fees toward his USBC salary and, as a result, qualified for SRTA pension benefits. Id. During the period between 2007 and September 30, 2011, George directed USBC to pay him over $1,000,000 in management fees, specifically $211,000 in 2007, $229,443 in 2008, $246,657 in 2009, $265,150 in 2010 and $177,800 in 2011. Id. (chart). Faced with the termination of the USBC contract, in or about 2011, George inflated his purported USBC salary by approximately $200,000 to boost his yearly pension payment from the SRTA. Id. at 7.

The indictment further alleges that in or around 2005, George provided his associate on the SRTA advisory board with questions to ask another bidder who at the time was competing with USBC for the five-year SRTA contract. Id. at 7. In or around 2010, George advised this

associate to limit public advertisements for the SRTA contract budding process so as to reduce USBC's competition. Id. The indictment further alleges that in or about 2010 George directed certain USBC managers and employees to attend a $100-per-person political fundraiser to garner support for USBC regarding the potential renewal of the SRTA contract. Id. The indictment also alleges that in or about 2010, George caused USBC to pay approximately $10,000 to a contractor as compensation for construction work, including a kitchen re-model, at his residence. Id.

The indictment further alleges George employed several individuals at USBC, but at various times instructed them to perform work at the Farm during their USBC hours. Id. at 3-4. Worker 1, George's longtime companion, was employed full-time at USBC as an assistant administrator and received a salary of $93,000 and benefits. Id. at 3. However, from March through October, Worker 1 regularly worked during USBC business hours at the Farm, including managing Farm employees and the produce stand. Id. George permitted Worker 1 to work from home so as to conceal that Worker 1, who was responsible for hiring and supervising Farm employees at the produce stand, worked at the Farm on a daily basis. Id. at 6. George and Worker 1 caused SRTA vehicles to be used for commuting to the Farm and for other personal purposes. Id. Worker 1 also instructed other USBC workers to use SRTA facilities to refuel vehicles for personal or Farm-related use. Id. Also alleged as part of the conspiracy, on one occasion Worker 1 instructed Worker 3 to fix a flat tire on Worker 1's SRTA vehicle after Worker 1 had been driving in Rhode Island for personal use. Id. Worker 1 also purchased office supplies and other items through USBC for use at the Farm and at George's residence. Id. at 6-7.

Worker 2, a longtime associate of George, was also employed full-time at USBC as a night supervisor. Id. at 3. Worker 2 received a salary, benefits and a vehicle for USBC-related

3

travel. Id. At George's direction, Worker 2 drove the vehicle to the Farm almost daily during the Farm season to perform Farm work. Id.

Worker 3 was employed full-time as a supervisor of maintenance at USBC, supervising approximately thirty USBC employees including Worker 2 and Worker 4, a bus mechanic responsible for repairs and maintenance work on SRTA buses and equipment. Id. On several occasions, George directed Worker 3 to dispatch Worker 4, during Worker 4's USBC hours, and others to the Farm to use SRTA equipment to perform maintenance and repairs on Farm vehicles and equipment. Id. at 3-4. George also directed Worker 3 and other USBC employees to use SRTA vehicles to plow snow from the Farm and his personal residence. Id. at 4.

In or about September 2010, George instructed a USBC assistant manager to send Worker 4 to the Farm to perform Farm-related work during his USBC office hours. Id. at 8. From at least as early as 2005 to October 2011, George directed Worker 4 to use SRTA equipment to perform sandblasting and paint work on a Farm tractor. Id. During 2005 to October 2011, George directed Worker 4 to use SRTA equipment to perform sandblasting and paint work on a Farm tractor, and in or about 2008 to 2010, George directed Worker 4 to use SRTA air conditioning equipment to the Farm to repair a Farm vehicle. Id. at 8.

Worker 5 was employed full-time as the information technology manager for USBC. Id. at 4. Worker 5 was responsible for purchase, inventory and maintenance of computers and electronic data systems at USBC. Id. George directed Worker 5 to purchase and provide him with several USBC cellular phones for both the Farm and George's personal use. Id. Worker 5 bought laptop computers, a router and a fax machine on behalf of USBC for use at George's residence. Id.

4

Based upon these allegations, the indictment charges George with conspiring to embezzle property from an organization receiving federal funds from in or about 2005 to in or about October 2011 in violation of 18 U.S.C. § 371 (Count I), id. at 5, and embezzlement from an organization receiving federal funds from in or about 2008 to in or about October 2011 in violation of 18 U.S.C. § 666(a)(1)(A) and aiding and abetting same (Count II), id. at 10.

### III. Procedural History

George has moved to dismiss on the grounds that: (1) the indictment fails to specify that he misappropriated funds equal to or in excess of the $5000 threshold within a 12-month period in which an organization received federal funds in excess of $10,000; (2) the funds identified in the indictment as misappropriated by George are not "property" within the meaning of 18 U.S.C. §666; and (3) Count Two of the indictment includes acts not within the relevant statute of limitations period and, when these acts are removed, the remaining acts fail to reach the statutory $5000 minimum. D. 48; 46 at 5-24; D. 47 at 2-8. The Court held a hearing on the motion and took the matter under advisement. D. 54.

### IV. Discussion

"When grading an indictment's sufficiency, [the court] look[s] to see whether the document sketches out the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution of the same offense." United States v. Guerrier, 669 F.3d 1, 4 (1st Cir. 2011) (noting that "in the ordinary course of events, a technically sufficient indictment handed down by a duly empanelled grand jury 'is enough to call for trial of the charge on the merits'") (quoting Costello v. United States, 350 U.S. 359, 363 (1956)). George carries a heavy burden in moving to dismiss the indictment, as "[a] court should exercise its authority to dismiss cautiously, since to dismiss an indictment

5

'directly encroaches upon the fundamental role of the grand jury.'" United States v. Thomas, 519 F. Supp. 2d 141, 143-44 (D. Me. 2007) (quoting Whitehouse v. U.S. Dist. Court, 53 F.3d 1349, 1360 (1st Cir. 1995)). "Viewed in its entirety, an indictment is sufficient if it describes all of the elements of the charged offense using the words of the relevant criminal statute." United States v. Wells, 766 F.2d 12, 22 (1st Cir. 1985) (citing Hamling v. United States, 418 U.S. 87, 117 (1974)); Fed. R. Crim. P. 7(c)(1) (requiring that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged" and, as to each count, "must give the official or customary citation of the statute, rule, regulation or other provision of law that the defendant is alleged to have violated").

### A. The Indictment Meets the Rule 7 Pleading Requirements

#### *1. The Allegations are Legally Sufficient*

As to the conspiracy charged in Count 1, the government must prove that the conspiracy charged in the indictment existed between George and one or more other people to commit the crime of embezzlement, that he willfully joined the conspiracy and that at least one of the conspirators committed one or more overt acts charged in the indictment to further the purpose of the conspiracy. United States v. Rivera-Santiago, 872 F.2d 1073, 1079 (1st Cir. 1989); United States v. Appolon, 715 F.3d 362, 370 (1st Cir. 2013). The indictment has sufficiently pled this crime. The indictment alleges that from at least as early as in or about 2005 to in or about October 2011, George conspired with others, including Workers 1-5 and an associate on the SRTA board to embezzle property, namely more than $5000 in SRTA funds on a yearly basis for his own benefit and the benefit of his associates (as alleged in Count), that, from the facts, George willfully joined this conspiracy, and that George and Worker 1 commit numerous overt acts in furtherance of this conspiracy. D. 1 at 5-9.

As to the embezzlement charged in Count 2, the government must prove: "(i) that [George] was 'an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof;' (ii) that [George] embezzled, stole, obtained by fraud, or converted or intentionally misapplied property 'valued at $5,000 or more' from 'such organization, government, or agency;' and (iii) that such 'organization, government, or agency receives, in any one year period [federal funds] in excess of $10,000.'" United States v. Cruzado-Laureano, 404 F.3d 470, 483-84 (1st Cir. 2005) (quoting 18 U.S.C. § 666(a) and (b)). The indictment has also sufficiently pled this crime charged in Count 2. The indictment alleges that George, as an agent of SRTA, embezzled property, namely SRTA labor, services, funds and other goods (i.e., SRTA funds, supplies and the labor of SRTA workers), valued at $5,000 or more and that the organization, SRTA, received in excess of $10,000 in federal funds from in or about 2008 and in or about October 2011.[1]

Even considering George's specific arguments about the deficiency of the indictment, the indictment is sufficient in all respects. The Court turns now to each of George's arguments.

*The indictment has sufficiently alleged that the statutory threshold are met*. George contends that the allegations as to § 666 offense is deficient because it fails to allege the amount of federal funds received each year during the charged period or how the $5,000 threshold was met. D. 46 at 6. The Court, however, agrees with another court has considered this issue that the indictment was not defective where "it fail[ed] to break down the amount that defendants obtained for each year alleged in the indictment." See United States v. Berger, 22 F. Supp. 2d 145, 153 (S.D.N.Y. 1998). The indictment has put George on notice of the crimes alleged and

---

[1] As the government contends, it is inappropriate at this stage to consider the attachments to George's motion, D. 46-1 (an operating Agreement between SRTA and USBC) and D. 46-2 (various policies concerning USBC employee vehicle use), as "a motion to dismiss is an inappropriate way 'to test the sufficiency of the evidence behind the indictment's allegations.'" United States v. Stewart, 841 F. Supp. 2d 431, 435 (D. Me. 2010) (quoting Guerrier, 699 F. 3d at 4).

the essential elements of same as required by statute. Moreover, the Court will instruct the jury as to the essential elements that the government must prove beyond a reasonable doubt at trial. Id.

*The indictment sufficiently alleges the embezzlement of property valued at $5,000 or more.* 18 U.S.C. § 666(c) contains an exception for "bona fide salary, wage fees, or other compensation paid . . . in the usual course of business" which George contends renders the government unable to meet the statute's $5,000 threshold for embezzlement of property, because he contends that the salaries paid to various workers fall within this exception. D. 46 at 13. In George's view, "the prosecution is predicated George causing the salaries to be paid and not the misappropriation of wages," and, without these bona fide salaries relied upon in the indictment, the indictment is deficient and does not reach the statutory minimum of theft of property valued at $5,000 or more. Id. at 5. For one example, George contends that because the workers in the indictment were contractually obligated to work only thirty-five hours per week and were also obligated to be on twenty-four hour call, whether they spent additional time at the Farm is irrelevant if they also satisfied the functions of their underlying positions. Id. at 12-13. As the government contends, however, "the fact that property constitutes salary or wages does not automatically remove it from Section 666's reach; rather, the relevant question is whether funds—salary or not—were intentionally misapplied." D. 53 at 12.

The allegations as to "property" for the purposes of the § 666 are sufficiently pled in the indictment. "Whether wages [are] bona fide is a question of fact for the jury." United States v. Dwyer, 238 F. App'x 631, 647 (1st Cir. 2007) (concluding that there was more than sufficient evidence for the jury to conclude that the payments to a worker were not bona fide wages); see United States v. Cornier-Ortiz, 361 F.3d 29, 36 (1st Cir. 2004) (explaining that payments "made

for a legitimate purpose—to hire [an] expert to obtain funding for maintenance work that was indeed done—does not render them bona fide under the statute if they were intentionally misapplied"); see also United States v. Baldridge, 559 F.3d 1126, 1139 (10th Cir. 2009) (providing, "[i]t is undisputed [the worker] was paid for work he did at [the defendant's] residence [and] [b]ecause this was not work for which he could have been paid by the County, the payment was not a bona fide wage paid in the usual course of business"); United States v. Urlacher, 979 F.2d 935, 938 (2d Cir. 1992) (rejecting defendant's "broad interpretation of § 666(c) as exempting from coverage the intentional misapplication of funds used for otherwise legitimate purposes").

George's reliance upon United States v. Harloff, 815 F. Supp. 618, 619 (W.D.N.Y. 1993) does not warrant a different result. "Harloff stands merely for the proposition that § 666(c) is applicable to allegations that an employee worked fewer hour than that for which she was obligated," Baldridge, 559 F.3d at 1139 (quoting United States v. Bryant, 556 F.Supp.2d 378, 427 (D.N.J. 2008)), not whether the salaries and wages of the employee was misappropriated by a defendant, as alleged here.

*The indictment is not duplicitous.* George also suggests that the indictment is duplicitous because it improperly bundles separate "acts of theft without specification as to the dates and unit of prosecution." D. 46 at 25. A count is duplicitous when it consolidates two or more distinct offenses into a single count. See United States v. Newell, 658 F.3d 1, 22 (1st Cir. 2011). The primary danger with duplicity in an indictment is that "a jury may find [a] defendant guilty on the count without having reached a unanimous verdict on the commission of any particular offense." United States v. Trainor, 477 F.3d 24, 32 n. 16 (1st Cir. 2007) (internal quotations omitted).

9

The government contends it has properly aggregated the qualifying transactions to meet the statutory minimum during a twelve-month period, as George's conduct represents a single scheme. D. 53 at 10-11. This is one way to measure a unit of prosecution for the § 666 offense see Newell, 658 F.3d at 24 (suggesting two possible units of prosecution: 1) treating all qualifying transactions within a one-year period as one offense under § 666; or 2) treating each qualifying transaction as a § 666 offense). Accordingly, here, where the indictment aggregates the qualifying transaction in a single count, the Court cannot say that it is improperly pled or duplicitous. Moreover, the Court can address any lingering concern about this issue in jury instruction regarding unanimity. See United States v. Parker, 165 F. Supp. 2d 431, 451 (W.D.N.Y. 2001).

*The facts, as alleged in Count 2, fall within the limitations period.* George contends that the § 666 offense is time-barred. Id. at 7-8. Because § 666 has been interpreted not to be a continuing offense, George "cannot be held criminally liable for any violations of [Section § 666(a)(1)(A)] that predate the five-year period preceding the return of the indictment in this case." United States v. Sunia, 643 F. Supp. 2d 51, 75 (D.D.C. 2009). In United States v. Harris, No. 02-42, 2003 WL 23316585, at *2 (E.D. Pa. Nov. 13, 2003) aff'd in part, rev'd in part and remanded sub nom., United States v. Lauderdale, 142 F. App'x 25 (3d Cir. 2005), the indictment alleged events spanning a six-year period from 1993 to 1999, although the relevant statute of limitations date was January 24, 1997. Id. at *1. The court instructed the jury that it had to find one event within the statutory period, but that it could consider other events within a twelve-month period of that event in order to reach the $5,000 threshold. Id. at 2. The Third Circuit affirmed. Lauderdale, 142 F. App'x at 32. That is, as long as it is alleged that George embezzled property within the limitations period, as is alleged in the indictment, even if that transaction or

transactions requires aggregation with transactions outside of the limitations period to reach the $5,000 statutory threshold, it is not time-barred. Accordingly, the Court will not dismiss Count 2 on this basis.

**V.     Conclusion**

For all of the aforementioned reasons, George's motions to dismiss, D. 47, 48, are DENIED.

**So ordered.**

>                             /s/ Denise J. Casper
>                             U.S. District Judge